OPINION OF THE COURT
Reinaldo E. Rivera, J.
Pursuant to defendant’s counsel’s motion this court has conducted an in camera inspection of the Grand Jury minutes. The challenge raised by the defense focuses upon the alleged insufficiency of the evidence presented to the Grand Jury as it *240 relates to the count or charge of criminal sale of a firearm in the third degree. (Penal Law § 265.11 [1].) The controversy arises from the characterization of who is a person "not authorized pursuant to law to possess a firearm”.
The defendant is relying on a decision from a court of coordinate jurisdiction. (People v Zodda, 153 Misc 2d 94 [1991].) The specific question presented to this court is, however, one of first impression.
The statute before us, Penal Law § 265.11 (1), reads as follows:
"A person is guilty of criminal sale of a firearm in the third degree when he is not authorized pursuant to law to possess a firearm and he unlawfully either:
"(1) sells, exchanges, gives or disposes of a firearm to another person not authorized pursuant to law to possess a firearm”.
The court in Zodda (supra) dealt with this statute. Then it was defined as criminal sale of a firearm in the second degree, still Penal Law § 265.11, still an E felony.
The defendant in Zodda (supra) sold a firearm to an undercover police officer. Our sister Bench was seemingly then likewise confronted with a matter of first impression. "The novel issue, and apparently one of first impression, is whether the sale of a firearm to a police officer working as part of an undercover operation, establishes the completed crime. More specifically, can an undercover officer be a 'person not authorized pursuant to law to possess a firearm’? (Penal Law § 265.11 [1].)” (People v Zodda, supra, 153 Misc 2d, at 95-96.)
That court concluded that it was clear that the undercover officer was authorized by law to possess the firearms he purchased from the defendant. The logical consequence following from this conclusion is that the "completed crime[ ] * * * is precluded since the 'buyer’ is an undercover police officer.”[1] (People v Zodda, supra, at 98.) The evidence presented to the Grand Jury in Zodda was insufficient as a matter of law; the court reduced Penal Law § 265.11 (1), a class E felony, to Penal Law §§ 110.00 and 265.11, a class A misdemeanor.
*241 The defendant in the case at bar contends that a similar outcome, to wit, reduction (or dismissal) is warranted. I disagree.
The defendant’s reliance on Zodda (supra) is somewhat misplaced. However, that court’s reasoning correctly addressed certain matters pertinent to our discussion.
PRELIMINARY
Since the statute is clear and unambiguous, its words should be given their plain and common meaning. (McKinney’s Cons Laws of NY, Book 1, Statutes § 92; People v Zodda, supra, 153 Misc 2d, at 96.) "It is fundamental that in interpreting a statute the court must initially examine the language in light of its natural and most obvious meaning.” (People v Zodda, supra, at 96.) By analyzing the statute in such a manner it is evident that the culpability of the seller is contingent upon not only her status, but, also, the status of the buyer. (Supra; see also, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 265.00, at 374.) To have criminal culpability pursuant to subdivision (1) of Penal Law § 265.11, both the buyer and the seller cannot be "authorized pursuant to law to possess a firearm.” Failure to meet either element makes it legally impossible to commit the completed offense. (People v Zodda, supra.) In People v Zodda the court dealt specifically with this issue. In our case, however, the facts are clearly distinguishable.
Article 400 of the Penal Law tells us who is authorized pursuant to law (statutory) to possess a firearm. Our confidential operative is not expressly included therein. Section 265.20 of the Penal Law tells us who is exempt from prosecution for conduct proscribed by statutes, more specifically Penal Law § 265.11; our confidential operative is not expressly included therein.
Our Legislature has either authorized a number of persons to possess a weapon under its licensing statute (Penal Law art 400) or exempted persons from prosecution (Penal Law § 265.20). In this voluminous number of categorical exceptions nowhere did the Legislature explicitly or implicitly exempt civilians, working for law enforcement, from prosecution for firearms possession, or otherwise authorize them to possess firearms. This silence, when measured against the vast number of categorical exemptions, does not appear to be a mere oversight. Instead, it seems to be a rational and deliberate *242 choice by the Legislature. (McKinney’s Cons Laws of NY, Book 1, Statutes § 74.)
ISSUE PRESENTED
The alleged transaction between the defendant, Vincent Owens, and the confidential operative, was illegal in nature. It is undisputed that Mr. Owens was not "authorized pursuant to law to possess a firearm”. (Penal Law § 265.11.)
Our question deals solely with the status of the confidential operative working for the New York City Department of Investigation (DOI) a law enforcement agency, in an undercover sting operation.
ANALYSIS
The confidential operative in the case at bar, as a class or category, is not expressly covered by, nor included under, the Penal Law article 400 authorization, nor under the section 265.20 exemption.
In Zodda (supra), the defendant sold a firearm to an undercover police officer. The undercover police officer is, without question, an individual "authorized pursuant to law to possess a firearm” (Penal Law § 265.11), thus completing that crime was legally impossible. For individuals working in tandem with law enforcement, i.e., our confidential operative, I find no statute authorizing either possession of a firearm or exemption from prosecution for such possession.
This confidential operative constitutes a "new” and distinct category altogether.
For the defendant to prevail, this new and distinct category requires inclusion in some other legal context. This category was possibly not even contemplated by our Legislature in the enactment of article 400 or section 265.00 of the Penal Law.
We next analyze the possible inclusion of the confidential operative in two other contexts: (a) individuals coming into innocent possession of a weapon; (b) persons covered by the voluntary surrender statutes. The confidential operative must be shown to: have had transitory and lawful possession of the weapon, acquired it innocently and surrendered it voluntarily.
The defense contends that the voluntary surrender statutes *243 (Penal Law §265.20 [a] [1] [f][2]; [b])[3] support the defendant’s claim. This argument lacks merit.
The reasons for this are twofold. First, the specific language of the statute does not encompass a confidential operative. Specifically Penal Law § 265.20 (a) (1) (f) immunizes only those who voluntarily surrender a weapon to the proper authorities from the offense of criminal possession of a weapon, not for criminal sale of a weapon; the crime for which Mr. Owens is charged. ("Nothing in this paragraph shall be construed as granting immunity from prosecution for any crime or offense except that of unlawful possession”.) On the other hand, Penal Law § 265.20 (b) only exempts such voluntary surrenders which are made "under circumstances not suspicious, peculiar or involving the commission of any crime.”
Second, these voluntary surrender statutes only exempt those who innocently acquire and then voluntarily surrender illegal firearms to the proper authorities; which this acquisition and surrender was not. To say that someone employed by DOI, or other law enforcement agency, to purchase and then surrender illegal firearms to them, under these covert circumstances, has voluntarily surrendered the firearm, stretches the word "voluntary” beyond its natural and obvious meaning. In addition, Penal Law § 265.20 (a) (1) (f) and (b) were enacted for the purpose of protecting a person who innocently comes into possession of a weapon and then voluntarily turns it over to a police officer. (People v Estenson, 88 AD2d 776 [1982] [quoting Governor’s Bill Jacket, L 1940, ch 259, mem to Governor from Assemblyman Fred G. Morritt]; see, People v Martorell, 87 Misc 2d 1035 [Sup Ct, NY County 1976]; People v Rosen, 74 NYS2d 624 [Kings County Ct 1947]; People v Robbins, 190 Misc 767 [Middletown City Ct 1947].) Unquestionably, this *244 alleged illegal transaction was not the innocent acquisition contemplated by the authors of Penal Law § 265.20 (a) (1) (f) and (b).
Counsel’s next argument is directed at the scope and meaning of "authorized by law”. More specifically, that the word law means, not only statutes, but also includes any common law and decisional case law. We do not disagree, authorized by law should properly be read to encompass more than simply statutory provisions absent specific language to the contrary.
In furtherance of his argument counsel relies in part on the following language of the New York Court of Appeals decision People v Almodovar (62 NY2d 126 [1984]), which dealt with the common-law defense of temporary and lawful possession. "In some circumstances, however, a person may possess an unlicensed or proscribed weapon and still not be guilty of a crime because of the innocent nature of the possession.” (People v Almodovar, supra, at 130.) Defense counsel quotes the above passage from Almodovar as support for the argument that the civilian operative in the case at bar had "authority pursuant to law to possess a firearm”. However, counsel neglects to consider the significance of the very next sentence in Almodovar: "[tjhis defense of 'temporary and lawful’ possession applies because as a matter of policy the conduct is not deemed criminal.” (Supra, at 130; emphasis added.) This court will not hold that a sale of a 9-mm Cobra semiautomatic pistol, for $1,500 between parties under the facts of the case at bar, is protected under the veil of "temporary and lawful possession”.
The possession by the confidential operative itself cannot be deemed "innocent”, for to do so is to go against law and all reason. This defense of "temporary and lawful” possession has only been applied in circumstances, as pointed out in Almodovar (supra), where the person has innocently acquired the firearm, such as finding it on the street (see, e.g., People v La Pella, 272 NY 81), or taken the weapon from a would-be assailant (see, e.g., People v Harmon, 7 AD2d 159 [stating defendant claimed he had wrestled blackjack from assailant]). The buying of a 9-mm semiautomatic pistol is not the innocent acquisition protected under this common-law defense. It will not be perverted by this court by expanding it to protect blatantly illegal activity.
FINDINGS
This court finds that the statute(s) do(es) not cover the confidential operative. He is not a person authorized by stat *245 ute to possess the firearm. He is not authorized by the common law to possess the firearm. No appellate or other persuasive decision has been presented or found authorizing the confidential operative or anyone acting in similar fashion, with similar facts, to possess a firearm.
The New York Court of Appeals in Almodovar (supra) did "recognize” that "authorized by law” goes beyond the narrower confines of authorized by statute. Our highest Court, however, did not reach the proposition and its decision cannot be construed to mean that "in [all] circumstances * * * a person may possess a * * * proscribed weapon and still not be guilty of a crime because of the innocent nature of the possession.” (Emphasis added.) This defense of "temporary and lawful” possession applies because as a matter of policy the conduct is not deemed criminal. (People v Almodovar, supra, 62 NY2d, at 130.)
In a prosecution for criminal sale of a firearm, the Almodovar decision (supra) cannot be relied upon by a "seller” of a firearm selling to another not authorized by law to possess this weapon.
CONCLUSIONS
Judges must recognize the need to exercise caution and common sense in avoiding erroneously deciding an issue, especially in matters of first impression.
In analyzing legislative intent, in applying rules of statutory construction, interpreting pertinent statutes and applying decisional case law and common law, this court refuses to establish a dangerous precedent. Counsel’s requests, if granted, would compel this court to engage in judicial activism. Counsel’s arguments require the creation of a new category of persons, thereby enlarging the class of individuals exempted from prosecution under Penal Law § 265.20, and/or those authorized by law to possess a weapon (Penal Law art 400).
This court will not extend the status of a police officer to a nonpolice officer; a confidential operative who happens to be working with a law enforcement entity (i.e., DOI).
The genesis and ultimate viability of Penal Law § 265.11 (1) cannot as a matter of common sense have contemplated such result.
*246 This court will not contribute to the emasculation of this statute, nor will it attribute to Penal Law § 265.11 (1) an inherent defect of legal impossibility not otherwise contemplated by the Legislature. There is no precedent for this result at common law nor through decisional case law.
The protections, exclusions, and exemptions contemplated by the New York State Legislature, evidenced through their legislative intent, rules of statutory construction and judicial philosophy should not be perverted by immunizing a new class of individuals from prosecution under Penal Law § 265.11 (1).
The sufficiency of the indictment is measured against the existence of three factual assertions: (first), there must be a "seller” not authorized by law to possess the firearm who then (second) "sells, exchanges, gives or disposes” of the firearm to, (third) another person a "buyer” who in turn is not authorized by law to possess said firearm.
In the case at bar, the evidence presented to the Grand Jury meets that test. All three of the factual assertions are met.
For the reasons stated in this opinion, I conclude that there is no legal impossibility for the charge of criminal sale of a firearm in the third degree. This defendant must stand trial for that count.
The motion to reduce or dismiss is denied.

. Worthy of note is that pursuant to subdivision (2) of CPL 265.11 the status of the buyer is irrelevant. Instead what the statute has imposed is the additional burden of a mens rea. In order to charge under subdivision (2) the seller must actually possess the firearm with the intent to sell it to another. Thus, the Legislature has not precluded the prosecution of illegal firearms dealers, such as Zodda who sell to police officers. However, the People bear the additional burden of proving intent.

. Penal Law § 265.20 (a) (1) (f) states in pertinent part the following: "A person voluntarily surrendering such weapon, instrument, appliance or substance, provided that such surrender shall be made to the sheriff of the county in which such a person resides * * * further, that the same shall be surrendered by such person only after he gives notice in writing to the appropriate authority * * * Nothing in this paragraph shall be construed as granting immunity from prosecution for any crime or offense except that of unlawful possession of such weapons, instruments, appliances, or substances surrendered as herein provided.”

. Penal Law § 265.20 (b) sets forth in pertinent part: "At any time, any person who voluntarily delivers to a police officer or a peace officer any weapon, instrument, appliance or substance specified in section 265.01, 265.02, 265.03, 265.04 or 265.05, under circumstances not suspicious, peculiar or involving the commission of any crime, shall not be arrested.”